[Cite as *In re D.N.O.*, 2013-Ohio-601.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: ADOPTION OF D.N.O. | : | JUDGES: |
|  | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2012-CA-00239 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of
                             Common Pleas, Probate Division, Case No.
                             213909

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      February 19, 2013

APPEARANCES:

For-Appellee                 For-Appellant

ARNOLD F. GLANTZ             CRAIG T. CONLEY
4883 Dressler Road N.W.      604 Huntington Plaza
Canton, OH 44718            220 Market Avenue South
                             Canton, OH 44702

*Farmer J.,*

**{¶1}** Appellant Chad Anthony Ostrowski ["Ostrowski"] appeals the December 19, 2012 Judgment Entry entered by the Stark County Court of Common Pleas, Probate Division, which denied his petition for adoption of his wife Amelia A. Ostrowski's ["Mother"] son D.N.O. (09/23/2003), upon finding the consent of the biological father, appellee John David Turnmire ["Father"], was required.

### Facts and Procedural History

**{¶2}** D.N.O. was born out of wedlock in September 2003. The relationship between Mother and Father ended six months later. Mother married Ostrowski in 2008, and they have lived together with the child. Father was incarcerated in 2005 and served three years in prison.

**{¶3}** On January 26, 2012, Ostrowski filed his Petition for Adoption of Minor, asserting that Father's consent is not required because Father has failed without justifiable cause to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition and/or has failed without justifiable cause to provide for the maintenance and support of the minor as required by law or judicial decree for at least one year immediately preceding the filing of the adoption petition.

**{¶4}** Father filed a Notice Contesting the Adoption on April 9, 2012. Father alleged that his failure to communicate and/or support the child was justified because Mother significantly interfered with Father's ability to communicate with the child.

**{¶5}** On April 20, 2012, Ostrowski filed a Motion for Summary Judgment, together with affidavits from himself and Mother. Father filed a response on May 15, 2012. The trial court denied the motion by Judgment Entry filed November 7, 2012.

**{¶6}** The probate court conducted an evidentiary hearing on November 19, 2012 on the issue of whether Father's consent is required for the adoption of D.N.O. The following evidence was adduced at the hearing.

**{¶7}** Mother testified that the minor has not received any communications from Father. Mother further testified that Father had no contact with the minor either by phone or by correspondence during the time that he was incarcerated. Nor has he been in contact with the child since his release from prison. The minor was eight years old at the time of the hearing.

**{¶8}** Father testified that in 2007 an Order of Child Support was issued requiring him to pay zero dollars in child support for the minor child (Exhibit Q). The Order provides that health insurance was not available as of the date of the Order but that should it become available, Father was required to inform the Child Support Enforcement Agency. Father testified that he has provided health insurance for the minor child since January of 2009 through his employer. (Exhibit R).

**{¶9}** Father testified that upon release from prison he attempted to contact Mother and requested to see the child. Father produced a copy of correspondence that he wrote to Mother which he sent to her current Culver Drive address. (Exhibit A) In the letter Father stated that he tried calling Mother but that the numbers have been changed. He advised that he wished to establish visits with the child and arrange for child support. He testified that Mother did not respond to that letter or any subsequent

letters. Father testified that he wrote a letter in the summer of 2011 and attempted to contact Mother via Facebook. Father provided two printouts of messages that he sent to Mother, one in November of 2011 and one in December 2012. Both messages requested visitation with the child, (Exhibits A-1 and A-2). Finally, Father testified that he filed an action for visitation in the Stark County Family Court on December 13, 2011 in Case Number 2011JCV01658.

{¶10} Ostrowski and Mother both deny any contact with Father in the one-year preceding the filing of the Petition. Although they admit to having knowledge of the action for visitation, they testified that they did not know of the action until the spring of 2012. Service of the complaint for visitation was not complete until November 2012. Certified mail sent to both Ostrowski and Mother was returned as unclaimed. The Guardian ad Litem in the Family Court case testified that he sent correspondence to Mother in December of 2011 or January of 2012 that was not returned, however, she did not pay the deposit or contact the Guardian ad Litem as requested in that letter.

{¶11} Mother testified that she had no knowledge of the fact that Father was providing insurance coverage for the child. She testified that she did appear at a hearing for child support after D.N.O. was born but that Father was not ordered to provide any support. With regard to the Facebook messages, Mother testified that if she had received them she would have ignored them. (Tr. 37) Mother further testified that she did not want Father to be a part of the child's life and that she has done whatever she could to avoid his involvement. (Tr. 31) She reiterated that she will do whatever it takes to stop Father from seeing the child (Tr. 40). Mother further testified that if Father had

come to her door in the year preceding the filing of the Petition she would not have let him in (Tr. 40).

**{¶12}** Elaine Turnmire, paternal Grandmother, lives with Father. Elaine Turnmire testified that Father showed her a post that Father had sent to Mother in November 2011. (Tr. 103) She also testified that Father told her that he sent Mother a letter in the summer of 2011 but that she did not see the letter. (Tr. 104) Elaine Turnmire further testified that she tried to have contact with the child on four occasions while Father was incarcerated but that Mother would not answer the door. Finally, Elaine Turnmire testified that she filed an action for grandparent visitation, which was opposed by Mother and eventually was denied.

### The Trial Court's Decision

**{¶13}** Via Judgment Entry filed June 29, 2012, the trial court found that there is justifiable cause for Father's failure to communicate with and support the minor child and that the consent of Father is required for the adoption of D.N.O. by Ostrowski.

**{¶14}** In reaching this conclusion, the trial court found,

> Mother testified unequivocally that she would do whatever she could to prevent Father from having contact with Dylan because she believed Father would be a bad influence on the child. She testified that she did not receive the correspondence upon Father's release from prison and that she did not receive the Facebook messages. She further testified that if she had received a Facebook message from Father she would have ignored it. She testified that if Father had come to her door and requested to see Dylan, she would not have answered the door.

Further, Father's action for visitation preceded the filing of the Petition for Adoption in this case by 45 days. Although Mother was not served with the Complaint prior to the Petition, the Court finds her testimony that she did not know of Father's attempts to have visitation with the child prior to the Spring [sic.] of 2012 not credible. Mother and Petitioner both received notices of certified mail in December of 2012 and both failed to respond. The Guardian ad Litem sent correspondence by regular mail in either late December or early January which was not returned to him. (Tr. 76-77) The instant adoption action was not filed until January 26, 2012.

Judgment Entry, filed Dec. 19, 2012 at 6.

### Assignments of Error

{¶15} Ostrowski raises three assignments of error,

{¶16} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

{¶17} "II. THE TRIAL COURT ERRED IN DENYING (SUB SILENTIO) APPELLANT'S MOTION TO STRIKE AND IN FAILING TO APPLY AND ENFORCE THE MANDATORY PROVISIONS OF O.R.C. 3107.07(K).

{¶18} "III. THE TRIAL COURT ERRED IN HOLDING, UPON HEARING, THAT APPELLEE'S CONSENT TO THE SUBJECT ADOPTION IS REQUIRED UNDER O.R.C. 3107.07(A).

I. & III.

**{¶19}** Ostrowski's first and third assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

**{¶20}** The termination of a natural parent's right to object to the adoption of his child requires strict adherence to the controlling statutes. *In re: Adoption of Kuhlmann*, 99 Ohio App.3d 44, 649 N.E.2d 1279 (1st Dist.1994). Ordinarily, the written consent of a minor child's natural parents is required prior to adoption. R.C. 3107.07 provides exceptions to this requirement.

**{¶21}** R.C. 3107.07(A) states:

Consent to adoption is not required of any of the following:

(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶22}** Before granting an adoption, the trial court must hear evidence as to whether first, "the required consents have been obtained or excused" and second, whether "the adoption is in the best interest of the person sought to be adopted." R.C. 3107.14(C). See, also, *In re Adoption of Fenimore,* 2d Dist. No. 17902, 2000 WL

204389(Jan. 28, 2000), *1; *In re: Adoption of Walters*, 112 Ohio St.3d 315, 2007–Ohio–7, 859 N.E.2d 545, ¶5.

**{¶23}** Ostrowski has the burden of proof in this action. "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613(1985). See also *In re: Adoption of Bovett*, 33 Ohio St.3d 102, 104, 515 N.E.2d 919(1987). "No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *Holcomb* at 368.

**{¶24}** With regard to support, the relevant inquiry is not whether the parent provided support as would be expected, "but whether the parent's failure to support * * * is of such magnitude as to be the equivalent of abandonment." *Gorski v. Myer,* 5th Dist. No. 2005CA00033, 2005-Ohio-2604*, ¶14, citing Celestino v. Schneider*, 84 Ohio App.3d 192(6th Dist. 1992). The Ohio Supreme Court emphasized that monetary gifts to the child do not qualify as support because they are not payments as required by law or judicial decree as R.C. 3107.07(A) requires. *In re: Adoption of M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶20. A probate judge has discretion to determine whether the biological parent provided support as contemplated by R.C. 3107.07(A) "and his or her judgment should not be tampered with absent an abuse of discretion." See *In re: Adoption of Bovett*, 33 Ohio St.3d at 107, 515 N.E.2d 919 (Douglas, J., concurring); S*ee also In re: Adoption of Charles B.*, 50 Ohio St.3d 88, 552 N.E.2d 884 (1990), paragraph three of the syllabus ("adoption matters must be decided on a case-

by-case basis through the able exercise of discretion by the trial court"). *In re: Adoption of M.B.,* ¶21.

**{¶25}** "Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof. * * * The determination of the probate court should not be overturned unless it is unsupported by clear and convincing evidence." *Id.*

**{¶26}** The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re: Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23(1986).

**{¶27}** The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

{¶28} With respect to a failure to support, the Ohio Supreme Court stated,

> And as we held in *Masa* and affirmed in *Bovett,* "[t]he question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140, at paragraph two of the syllabus.

*In re: Adoption of M.B.,* ¶24

{¶29} In *Cross*, the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the

statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶30}** Therefore, for Ostrowski to prevail in this adoption proceeding without Father's consent, he must prove by clear and convincing evidence that (1) there has been a failure of communication or support by Father for the one-year period and (2) the failure is unjustified.

**{¶31}** Ostrowski must also establish that the failure to communicate was without justifiable cause. "If the natural parent presents evidence showing that his failure to communicate was not unjustified, the petitioner must prove by clear and convincing evidence that such failure was not justified." *In re: Adoption of Shea*, 10th Dist. No. 90–AP–245, 1990 WL 106468(July 24, 1990), *citing Holcomb.*

**{¶32}** *Holcomb* further held:

Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence.

18 Ohio St.3d 361, 481 N.E.2d 613, paragraph three of the syllabus.

{¶33} In the case at bar, the trial court found Father presented evidence showing his failure to communicate was justified as the result of significant interference and discouragement of communication by Mother and Ostrowski. We find there is sufficient evidence to support the trial court's decision. Specifically, the trial court found

> Mother testified unequivocally that she would do whatever she could to prevent Father from having contact with Dylan because she believed Father would be a bad influence on the child. She testified that she did not receive the correspondence upon Father's release from prison and that she did not receive the Facebook messages. She further testified that if she had received a Facebook message from Father she would have ignored it. She testified that if Father had come to her door and requested to see Dylan, she would not have answered the door.
>
> * * *
>
> Father's action for visitation preceded the filing of the Petition for Adoption in this case by 45 days. Although Mother was not served with the Complaint prior to the Petition, the Court finds her testimony that she did not know of Father's attempts to have visitation with the child prior to the Spring [sic.] of 2012 not credible. Mother and Petitioner both received notices of certified mail in December of 2012 and both failed to respond. The Guardian ad Litem sent correspondence by regular mail in either late December or early January which was not returned to him. (Tr. 76-77) The instant adoption action was not filed until January 26, 2012.

**{¶34}** The trial court as the trier of fact is free to accept or reject any or all of the testimony of the witnesses. The trial court obviously chose to believe Father in this instance.

**{¶35}** Upon review of the entire record in this matter, we find the trial court's determination Father's consent to the adoption was necessary was supported by clear and sufficient evidence.

**{¶36}** We further find that any error by the trial court in denying Ostrowski's motion for summary judgment is rendered moot or harmless because the subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the Father. *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 1994-Ohio-362, 642 N.E.2d 615, syllabus. *Accord, Aurora Loan Services, LLC v. Sanson-Jones*, 10th Dist. No. 12AP-258, 2012-Ohio-5477, ¶19; *Schnipke v. Safe–Turf Installation Group, L.L.C.,* 190 Ohio App.3d 89, 2010–Ohio–4173, 940 N.E.2d 993, ¶¶ 15–16 (3d Dist.).

**{¶37}** Ostrowski's first and third assignments of error are overruled in their entirety.

II.

**{¶38}** In his second assignment of error, Ostrowski argues that his December 17, 2012 Motion to Strike should have been granted due to Father's failure to timely file his objection within the filing deadline mandated by R.C. 3107.11(B).

**{¶39}** R.C. 3107.11 state in relevant part,

> (A) After the filing of a petition to adopt an adult or a minor, the court shall fix a time and place for hearing the petition. The hearing may

take place at any time more than thirty days after the date on which the minor is placed in the home of the petitioner. At least twenty days before the date of hearing, notice of the filing of the petition and of the time and place of hearing shall be given by the court to all of the following:

* * *

(B) Upon the filing of a petition for adoption that alleges that a parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor, the clerk of courts shall send a notice to that parent with the following language in boldface type and in all capital letters:

"A FINAL DECREE OF ADOPTION, IF GRANTED, WILL RELIEVE YOU OF ALL PARENTAL RIGHTS AND RESPONSIBILITIES, INCLUDING THE RIGHT TO CONTACT THE MINOR, AND, EXCEPT WITH RESPECT TO A SPOUSE OF THE ADOPTION PETITIONER AND RELATIVES OF THAT SPOUSE, TERMINATE ALL LEGAL RELATIONSHIPS BETWEEN THE MINOR AND YOU AND THE MINOR'S OTHER RELATIVES, SO THAT THE MINOR THEREAFTER IS A STRANGER TO YOU AND THE MINOR'S FORMER RELATIVES FOR ALL PURPOSES. IF YOU WISH TO CONTEST THE ADOPTION, YOU MUST FILE AN OBJECTION TO THE PETITION WITHIN FOURTEEN DAYS AFTER PROOF OF SERVICE OF NOTICE OF THE FILING OF THE PETITION AND OF THE TIME AND PLACE OF HEARING IS GIVEN TO YOU. IF YOU WISH TO CONTEST THE ADOPTION, YOU MUST

ALSO APPEAR AT THE HEARING. A FINAL DECREE OF ADOPTION MAY BE ENTERED IF YOU FAIL TO FILE AN OBJECTION TO THE ADOPTION PETITION OR APPEAR AT THE HEARING."

* * *

**{¶40}** In the case at bar, the Father was served with the notice of hearing on March 13, 2012. Father filed his notice contesting the adoption on April 9, 2012. The hearing on the petition to adopt was originally scheduled for April 16, 2012; however, the hearing did not take place until November 19, 2012. Ostrowski's motion to strike was filed over eight months after Father's notice contesting the adoption was filed. Further, Ostrowski did not file his motion to strike prior to the hearing. The motion was filed nearly one month after the hearing was concluded.

**{¶41}** Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 1995-Ohio-40, 646 N.E.2d 1115, *citing State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359, 1994-Ohio-302, 626 N.E.2d 950. *See, also*, *Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145(1943) paragraph one of the syllabus. As the Ohio Supreme Court has stated:

> The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or

unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.

*Lester* at 92-93, quoting *State v. Kollar*, 95 Ohio St. 89, 112 N.E.2d 196(1915)

**{¶42}** In the case at bar, we will not read the time limit to be included in the notice as a bar prohibiting Father from filing and objecting to the adoption because 1). Father had filed a motion for visitation with the child in Case No. 2011 JCV 01658 on December 13, 2011, 45 days before the petition for adoption was filed; 2). Ostrowski's Motion to Strike was not filed until December 17, 2012, eight months after Father filed his notice contesting the adoption and 29 days after the evidentiary hearing had occurred; 3). Father's notice contesting the adoption petition was filed April 9, 2012, seven months before the evidentiary hearing held on November 19, 2012.

**{¶43}** The trial court conducted an evidentiary hearing concerning whether or not Father's consent for the adoption was required. The trial court concluded that Father's consent was required. Under these circumstances, it would seem incongruous to now say that the trial court committed reversible error in denying Ostrowski's motion to strike. Any error in the denial of the motion was rendered moot or harmless since a full and complete development of the facts at trial showed that Father was entitled to judgment. In this regard, substantial justice would clearly not be served by setting aside the trial court's findings and the final judgment of the trial court. *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d at 156, 1994-Ohio-362, 642 N.E.2d 615.

**{¶44}** Ostrowski's second assignment of error is overruled in its entirety.

{¶45} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Probate Division, is affirmed.

By Farmer, J.,

Delaney, P.J., and

Hoffman, J., concur

_s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/_Patricia A. Delaney_____
HON. PATRICIA A DELANEY


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN

[Cite as *In re D.N.O.*, 2013-Ohio-601.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN RE: ADOPTION OF D.N.O.            :
                                     :
                                     :
                                     :
                                     :
                                     :
                                     :            JUDGMENT ENTRY
                                     :
                                     :
                                     :
                                     :            CASE NO. 2012-CA-00239


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Stark County Court of Common Pleas, Probate Division, is affirmed.   Costs to

appellant.




 s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/  Patricia A. Delaney_____
HON. PATRICIA A DELANEY


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN