[Cite as *Radatz v. Fed. Natl. Mtge. Assn.*, 2014-Ohio-2179.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100205**

# REBEKAH R. RADATZ

PLAINTIFF-APPELLANT

vs.

# FEDERAL NATIONAL MORTGAGE ASSOCIATION

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-03-507616

**BEFORE:** S. Gallagher, P.J., Rocco, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 22, 2014

**ATTORNEYS FOR APPELLANT**

Brian Ruschel
925 Euclid Avenue
Suite 660
Cleveland, Ohio   44115

Patrick J. Perotti
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio   44077


**ATTORNEYS FOR APPELLEE**

J. Philip Calabrese
Richard Gurbst
Squire Sanders (US) L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio   44114-1304

Jeffrey Kilduff
O'Melveny & Myers, L.L.P.
1625 Eye Street, N.W.
Washington, D.C.   20006

SEAN C. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant Rebekah Radatz, individually and on behalf of the certified class members (collectively "Plaintiffs"), appeals from the trial court's decision to dismiss all claims against the defendant-appellee Federal National Mortgage Association ("Fannie Mae"), based on the claim that the trial court lacked subject matter jurisdiction. For the following reasons, we reverse the decision of the trial court and remand for further proceedings.

{¶2} In 2003, Radatz filed a complaint alleging individual and class action claims against Fannie Mae. Radatz alleged that Fannie Mae failed to comply with R.C. 5301.36(B) and file a satisfaction of a residential mortgage within 90 days from the date that she and other similarly situated mortgagors satisfied the loan debt. Radatz and the class, certified in December 2006, each sought to recover statutory damages in the amount of $250 pursuant to R.C. 5301.36(C). During discovery, it was determined that the class consisted of well over 100,000 individuals.

{¶3} "Fannie Mae was established in 1938 as a federal agency and was converted into a private corporation in 1968. * * * '[Fannie Mae is] structured as [a] private [corporation], but [is] federally chartered and play[s] an important role in the national housing market by making it easier for home buyers to obtain loans.'" *Fed. Hous. Fin. Agency v. Royal Bank of Scotland Group P.L.C.*, D.Conn. No. 3:11-cv-01383, 2012 U.S. Dist. LEXIS 116292, 3-4 (Aug. 17, 2012), quoting *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 926, (D.C.Cir.2011). In response to the housing and mortgage

market crisis in July 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), creating the Federal Housing Finance Agency ("FHFA"). *Id.* Congress granted the director of the FHFA conditional authority to place regulated entities, such as Fannie Mae, into conservatorship or receivership "'for the purpose of reorganizing, rehabilitating, or winding up [their] affairs.'" *Id.*, quoting 12 U.S.C. 4617(a). "On September 6, 2008, the Director of the FHFA placed Fannie Mae under the FHFA's temporary conservatorship with the objective of stabilizing the institutions so they could return to their normal business operations." *Id.*

{¶4} Meanwhile in September 2010, and after Fannie Mae's unsuccessful attempt to remove the action to federal court in light of HERA, Plaintiffs began compiling the list of class members. Plaintiffs completed the list — numbering over 100,000 — in February 2013 and promptly notified Fannie Mae. Seemingly in response, on March 13, 2013, Fannie Mae filed a motion to dismiss all claims, arguing that the trial court lacked jurisdiction because of a consent order issued by the FHFA director just four days earlier. It is undisputed that through the sole directive in the consent order, the FHFA director decreed that Fannie Mae was to cease and desist violating 12 U.S.C. 4617(j)(4), the so-called Penalty Bar provision that grants immunity to the FHFA from paying "any amount in the nature of penalties and fines." Fannie Mae argued that through 12 U.S.C. 4635(b), the grant of immunity pursuant to 12 U.S.C. 4617(j)(4) became a jurisdictional concept, and therefore, the trial court lacked jurisdiction to affect any order issued by the FHFA director. In order to follow Fannie Mae's logic, it must be determined whether

any damages awarded to the Plaintiffs would necessarily affect the consent order. Fannie Mae considers the statutory damages pursuant to R.C. 5301.36(C) to be in the nature of a fine or penalty. In light of Fannie Mae's argument, the trial court granted the Civ.R. 12(B)(1) motion and dismissed Plaintiffs' claims with prejudice on the basis that the trial court was divested of jurisdiction to enter a judgment in their favor against Fannie Mae.

{¶5} Plaintiffs timely appealed the trial court's decision, advancing two assignments of error. In the second assignment of error, the Plaintiffs claim the trial court erred in declining jurisdiction because the FHFA order violated the Plaintiffs' due process rights and was otherwise unenforceable. We need not address the second assignment of error. In their first assignment of error, Plaintiffs contend that neither 12 U.S.C. 4635(b) nor 4617(j)(4) divested the trial court of jurisdiction to resolve the claims, and therefore, the trial court erred by dismissing all claims against Fannie Mae. We find merit to Plaintiffs' first assignment of error. The trial court was not divested of jurisdiction. Accordingly, any claims advanced in the second assignment of error are moot.

{¶6} A trial court's decision on a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction is reviewed under a de novo standard of review. *Rheinhold v. Reichek*, 8th Dist. Cuyahoga No. 99973, 2014-Ohio-31, citing *Bank of Am. v. Macho*, 8th Dist. Cuyahoga No. 96124, 2011-Ohio-5495, ¶ 7. The sole question for our consideration, therefore, is whether the trial court erred in holding that the FHFA consent order divested the trial court of jurisdiction over the Plaintiffs' claim for statutory

damages.   After reviewing the record and arguments, we must answer that question in the affirmative.

**{¶7}** Plaintiffs' claims against Fannie Mae are predicated on the allegation that, pursuant to R.C. 5301.36(B), Fannie Mae failed to record the satisfaction of a residential mortgage within 90 days of the mortgagor satisfying the loan.   As a result, Plaintiffs seek statutory damages in the amount of $250 per individual, injured mortgagor.   R.C. 5301.36(C).   Fannie Mae argues that pursuant to a federal statute, it is immune from liability for any penalties or fines provided for in the Ohio Satisfaction of Residential Mortgage Statute and because the director of the FHFA incorporated the immunity language of 12 U.S.C. 4617(j)(4) into a consent order, the trial court lacked jurisdiction to render a judgment upon the merits of Plaintiffs' statutory claim for damages.   Inherent in that argument is the concept that any damages awarded pursuant to R.C. 5301.36(C) are in the nature of a penalty or fine.

**{¶8}** Congress granted the FHFA immunity from liability for any "amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax, or any recording or filing fees when due."   12 U.S.C. 4617(j)(4).   Courts have construed this grant of immunity to apply to the imposition of fees or penalties against Fannie Mae while under the direction and control of the FHFA through conservatorship or receivership.[1]   *Fed. Hous. Fin.*

---

[1]We need not address this issue for the purposes of the current case although it was raised by Plaintiffs in the briefing, and therefore, summarily rely on the interpretation of the statute as provided by other courts from around the country.   The determination of whether Fannie Mae is included in

*Agency v. Chicago*, 962 F.Supp.2d 1044 (N.D.Ill.2013); *Nevada v. Countrywide Home Loans Servicing, L.P.*, 812 F.Supp.2d 1211 (D.Nev.2011); *Higgins v. BAC Home Loans Servicing, L.P.*, E.D.Ky. No. 12-cv-183-KKC, 2014 U.S. Dist. LEXIS 43278 (Mar. 31, 2014). Congress, in establishing the FHFA's authority pursuant to HERA, further prescribed that no court "shall have jurisdiction to affect, by injunction or otherwise, the issuance or enforcement of any notice or order" issued pursuant to 12 U.S.C. 4631 (cease and desist orders), or to "review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. 4635(b).

{¶9} Before addressing the application of the federal statutes to the current facts, it is important to understand the extent of the FHFA consent order. On March 9, 2013, the acting director of the FHFA issued a consent order stating as follows:

> Pursuant to 12 U.S.C. § 4631 [(cease and desist proceedings)], [Fannie Mae] and Federal Home Loan Mortgage Corporation ("Freddie Mac") (together "the Enterprises") are hereby ordered to cease and desist from violating 12 U.S.C. § 4617(j)(4) by paying, for any reason, directly or indirectly, any fines or penalties *imposed* by any state mortgage satisfaction law on the Enterprises for noncompliance. Furthermore, Fannie Mae is ordered to cease and desist from violation 12 U.S.C. § 4617(j)(4) by paying, for any reason, directly or indirectly, *any amount* pursuant to Ohio Code 5301.36 or *pursuant to any judgment* in connection with the pending lawsuit styled Radatz v. Fed. Nat'l Mortgage Ass'n, Case No. CV-03-507616 (Ohio Com. Pleas).

(Emphasis added.) There are two important facets of the FHFA's consent order. First, as emphasized in the quoted language, the order states that Fannie Mae is prohibited from

---

the statutory grant of immunity conferred on the FHFA does not alter the disposition of the current case. Our resolution of that issue, therefore, is unnecessary for the purposes of this appeal.

paying "any amount" pursuant to R.C. 5301.36(C) based on 12 U.S.C. 4617(j)(4). "It is well settled that 'the starting point for interpreting a statute is the language of the statute itself.'" *Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935, 939-940 (6th Cir.2013), quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). "'[W]hen the statutory language is plain, [the court] must enforce it according to its terms.'" *Id.*, quoting *Jimenez v. Quarterman*, 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009). "Analysis of any challenged action is necessary to determine whether the action falls within the broad, but not infinite, conservator authority." *Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 994 (9th Cir.2013). "[I]f the FHFA were to act beyond statutory or constitutional bounds in a manner that adversely impacted the rights of others," nothing in 12 U.S.C. 4617 prevents courts from delving into the FHFA's authority to act. *In re Fed. Home Loan Mtge. Corp. Derivative Litigation*, 643 F.Supp.2d 790, 799 (E.D.Va.2009).

{¶10} Thus, the language in the consent order cannot be read in isolation from the statutory language empowering FHFA's and Fannie Mae's immunity. The language of the consent order must be informed by a plain reading of 12 U.S.C. 4617(j)(4), which grants the FHFA immunity, but in doing so, modifies "any amount" with the descriptive, "in the nature of penalties or fines." Accordingly, inasmuch as the consent order states that Fannie Mae is prohibited from paying "any amounts in connection" with the underlying case, the extent of the cease and desist order is limited to Congress's grant of immunity to the FHFA and Fannie Mae, immunizing Fannie Mae from paying "any

amounts" in the nature of penalties or fines in connection with the underlying case. Fannie Mae has cited no authority establishing the basis of the FHFA's authority to infinitely immunize Fannie Mae from paying any amounts stemming from any actions.

**{¶11}** Second, and more important, the consent order directly acknowledges the trial court's ability to grant a judgment in favor of Plaintiffs and against Fannie Mae based on a violation of Ohio's mortgage satisfaction law. In the consent order, the acting director of the FHFA expressly provided that Fannie Mae must cease and desist from paying any amount, subject to the modifier, in the nature of fines or penalties, pursuant to any judgment issued in the "pending" underlying case or any imposition of fines or penalties pursuant to a state's mortgage satisfaction laws. In simple terms, the consent order did not facially prohibit the trial court from entering a judgment against Fannie Mae in this case or generally imposing damages against Fannie Mae based on R.C. 5301.36(C). Instead, the order acknowledged the possibility of a judgment or imposition of damages in the pending action and expressed Congress's intent to limit Fannie Mae's liability for paying any amount in the nature of a penalty or fine pursuant to 12 U.S.C. 4617(j)(4). With this understanding, the scope of the party's arguments, as framed, is limited to whether any judgment in the trial court in the current case would affect the consent order, pursuant to 12 U.S.C. 4635(b), or whether a judgment entered would be in the nature of a penalty or fine levied against Fannie Mae, pursuant to 12 U.S.C. 4617(j)(4), the two jurisdictional bars advanced by Fannie Mae.

{¶12} In this case, the former inquiry is subsumed by the latter. The consent order merely orders Fannie Mae to cease and desist violating 12 U.S.C. 4617(j)(4). The only order that would affect the consent order would be an order forcing Fannie Mae to pay any amount in the nature of a penalty or fine stemming from this particular case. The prohibition against assessing penalties or fines against the FHFA or Fannie Mae, however, is not grounds to divest the court of jurisdiction. *See Higgins*, E.D.Ky. No. 12-cv-183-KKC, 2014 U.S. Dist. LEXIS 43278 (noting that 12 U.S.C. 4617(j)(4) prohibits the imposition of fines or penalties against Fannie Mae or the FHFA); *Chicago*, 962 F.Supp.2d 1044 (12 U.S.C. 4617(j)(4), exempts the FHFA from the imposition of fines and penalties). Neither courts in *Higgins* or *Chicago* addressed 12 U.S.C. 4617(j)(4) from a jurisdictional standpoint, and tellingly, Fannie Mae cited no authority for the proposition that the immunity from liability to pay penalties or fines is jurisdictional.

{¶13} We acknowledge the fact that *Higgins* is distinguishable from the current facts in that the FHFA never issued a consent order to protect Fannie Mae as it did in the underlying case. We cannot escape the conclusion that the consent order appears to merely parrot the statutory immunity in an overt attempt to create a jurisdictional issue through 12 U.S.C. 4635(b), which is not expressly provided for in the statutory scheme granting the FHFA and, in this instance, Fannie Mae, immunity from paying any amounts in the nature of penalties or fines pursuant to 12 U.S.C. 4617(j)(4). Nevertheless, this issue is not currently before this court, and we assume for the sake of this appeal that the

conservator had authority to enter the consent order mimicking the immunity language of 12 U.S.C. 4617(j)(4).

{¶14} In order for a judgment in the underlying case to affect the consent order, Fannie Mae must assume that the damages awarded pursuant to R.C. 5301.36(C) are in the nature of a penalty or fine. In interpreting the Ohio General Assembly's intent, the Ohio Supreme Court held, however, that

> the statutory language is clear: R.C. 5301.36(C) expressly provides that a mortgagor "in a civil action" may sue for "damages." To conclude that R.C. 5301.36(C) creates a penalty, this court would have to delete the term "damages," a word used by the legislature, and insert the term "penalty" or "forfeiture," words not chosen by the legislature. Doing so would flout our responsibility to give effect to the words selected by the legislature in enacting a statute.

*Rosette v. Countrywide Home Loans, Inc.*, 105 Ohio St.3d 296, 2005-Ohio-1736, 825 N.E.2d 599, ¶ 13. In that case, the Ohio Supreme Court faced the issue of whether to apply the one-year statute of limitations for an action upon a statute for a penalty or forfeiture, or the six-year limitations period for a statutory liability action. *Id.* at ¶ 11. Subsequently, the Ohio Supreme Court clarified that the compensatory damages imposed by R.C. 5301.36(C) are "more akin to stipulated or liquidated damages" rather than punitive damages that are meant to punish the wrongdoers. *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 113 Ohio St.3d 394, 2007-Ohio-2203, 865 N.E.2d 1275, ¶ 13. In the latter case, the court noted the difference between damages awarded in the nature of compensatory damages and treble "damages," which serve a punitive objective. *Id.* at ¶ 14.

**{¶15}** Inasmuch as federal law controls this issue of whether damages are in the nature of a penalty or fine, in order to determine whether a "particular statutory provision is penal in nature," federal courts use a three-tiered analysis: (1) whether the purpose of the damages is to redress individual or public wrongs, (2) whether the recovery runs to the individual or the public, and (3) whether the recovery is disproportionate to the harm suffered. *Asklar v. Honeywell, Inc.*, 95 F.R.D. 419, 423 (D.Conn.1982); *Higgins*, E.D.Ky. No. 12-cv-183-KKC, 2014 U.S. Dist. LEXIS 43278, at *13 (also noting that damages are commensurate with the injury received while a penalty has no reference to the actual loss sustained by the individual suing for recovery).

**{¶16}** On this point, the federal district court's decision in *Higgins* is instructive. In that case, Fannie Mae and the FHFA advanced the same arguments: that Fannie Mae is immune from any judgment because of the immunity from the imposition of fines or penalties afforded by 12 U.S.C. 4617(j)(4), albeit based on Kentucky's recording statute that establishes up to treble damages for any mortgagee's failure to record assignments of the mortgage. *Higgins* at *15. The *Higgins* court noted that the remedy provided by Kentucky's recording statute inured to the affected individual as a form of liquidated damages for the mortgagee's violation. *Id.* In light of that finding, the court denied Fannie Mae and the FHFA's motion to dismiss. The federal district court could not only award damages, but those damages could be imposed against Fannie Mae and the FHFA because the damages were outside the scope of their statutory immunity. *Id.*

{¶17} In an attempt to deem Ohio's interpretation of its own statutory award of damages in conflict with the federal court's separate analysis used to determine whether an award is penal or compensatory, Fannie Mae cites *Bowles v. Farmers Natl. Bank of Lebanon, Kentucky*, 147 F.2d 425, 428 (6th Cir.1945), and *Schaefer v. H.B. Green Transp. Line, Inc.*, 232 F.2d 415, 418 (7th Cir.1956). Neither case supports Fannie Mae's position. *Bowles* is consistent with *Higgins*. The statute at issue in *Bowles* provided that the damages for any violations were to be recovered by the government, which converts damages into those in the nature of a penalty. *Bowles* at 428. On the other hand, *Schaefer* is simply inapplicable. In that case, the plaintiff shareholder impermissibly attempted to enforce an Illinois statutory provision against an Iowa corporation because no Iowa statute penalized the conduct that an Illinois statute penalized. *Schaefer* at 416. The facts and issues in *Schaefer* simply have no relevance to the facts or issues advanced in the current case. Fannie Mae offered no other analysis or evidence to demonstrate that any damages awarded pursuant to R.C. 5301.36(C) are in the nature of a penalty or a fine.

{¶18} The factual underpinnings of the current case are sufficiently similar to those addressed in *Higgins*, E.D.Ky. No. 12-cv-183-KKC, 2014 U.S. Dist. LEXIS 43278. Not only has the Ohio Supreme Court referred to the damages awarded pursuant to R.C. 5301.36(C) as liquidated, and thus compensatory damages, but the damages inure to the benefit of the individuals aggrieved by Fannie Mae's failure to timely file the satisfaction of judgment as mandated by Ohio law. *See also Asklar*, 95 F.R.D. at 423. More

important, unlike the statute at issue in *Higgins,* which awarded treble damages and yet was deemed compensatory in nature, R.C. 5301.36(C) does not award treble or other presumptively punitive damages.

{¶19} As a result, the result is the same either under Ohio's interpretation of its own statute or the federal analysis. R.C. 5301.36(C) awards compensatory damages. Those damages are not in the nature of a penalty or fine. Therefore, any judgment awarded by the lower court would not violate any immunity conferred by 12 U.S.C. 4617(j)(4). Any judgment or imposition of damages pursuant to R.C. 5301.36(C) is not in the nature of a penalty or fine. Therefore, the trial court erred by relying on the statutory immunity as grounds to dismiss Plaintiffs' complaint.

{¶20} Finally, in light of the determination that any judgment awarded in the lower court would not affect the immunity conferred by 12 U.S.C. 4617(j)(4), the court did not lack jurisdiction to dispose of the merits of the class action complaint. Pursuant to 12 U.S.C. 4635(b), the trial court was divested of jurisdiction to issue any order that affected the FHFA consent order. Because any damages awarded through a judgment in the lower court action are not in the nature of a penalty or fine, the court had jurisdiction to dispose of the merits of all claims and to award damages to Plaintiffs based on Fannie Mae's alleged violation of R.C. 5301.36(C). Further, the FHFA consent order itself contemplated a judgment. It must logically follow that the trial court was not divested of jurisdiction. Any judgment in the underlying case could not possibly affect a consent order that specifically contemplated such a judgment being imposed in the first place.

**{¶21}** Plaintiffs in this case do not otherwise seek relief expressly banned by the FHFA consent order, or an injunction to prevent its enforcement, or declaratory relief to have the consent order declared invalid. *See Rex v. Chase Home Fin. L.L.C.*, 905 F.Supp.2d 1111 (C.D.Cal.2012) (deciding that based on a similar federal statutory scheme, the trial court possessed jurisdiction because the defendants did not provide the legal authority or evidence to show that the relief in the complaint actually affected a consent order). Plaintiffs merely seek the resolution of the merits of the class action claims that have been pending for more than a decade. Resolution of those claims will not affect or otherwise impede application of the consent order, and therefore, the trial court was not divested of jurisdiction in the underlying case.

**{¶22}** For the foregoing reasons, we reverse the decision of the trial court dismissing all claims based on the lack of subject matter jurisdiction and we remand the case for further proceedings consistent herein.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
TIM McCORMACK, J., CONCUR